IN THE COURT OF APPEALS OF IOWA
No. 24-1248
Filed December 18, 2024

IN THE INTEREST OF K.E., S.B., and V.B.,
Minor Children,

B.E., Mother,
        Appellant,
_____

        Appeal from the Iowa District Court for Polk County, Erik I. Howe, Judge.


        A mother appeals the termination of parental rights to her three girls on multiple grounds. **AFFIRMED**


        Donna M. Schauer of Schauer Law Office, Adel, for appellant mother.

        Brenna Bird, Attorney General, and Lisa Jeanes, Assistant Attorney General, for appellee State.

        Cathleen J. Siebrecht of Siebrecht Law Firm, Des Moines, attorney and guardian ad litem for minor children.


        Considered by Buller, P.J., Langholz, J., and Mullins, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2024).

**MULLINS, Senior Judge.**

The juvenile court terminated the mother's parental rights to her three girls[1] under Iowa Code section 232.116(1)(d), (f), (h), and (i) (2024). On appeal, the mother challenges the sufficiency of the evidence supporting the grounds for termination, contends termination is not in the children's best interests, and argues a permissive exception to termination applies. The mother also argues she should have been granted additional time to work toward reunification.

## I. Background

This case concerns three sisters who share the same mother.[2] K.E. was eight years old at the time of the termination hearing. S.B. was two years old, and V.B. was one. The oldest two children first came to the attention of the Iowa Department of Health and Human Services (HHS) in 2022, when S.B. tested positive for THC at birth. That matter was closed with the mother's cooperation. But new concerns arose later in the year after HHS received a report that the mother continued to use marijuana and had allowed others to smoke marijuana in the presence of her children. In December 2022, the mother—then fifteen-weeks pregnant with V.B.—tested positive for marijuana and cocaine while hospitalized for mental-health treatment. The mother acknowledged daily marijuana use but denied using cocaine.

Around the same time, HHS learned that K.E. had reported an incident of sexual abuse by her mother's boyfriend, D.B. During an interview, K.E. also

---

[1] The mother gave birth to her fourth child—a son—shortly before the termination hearing giving rise to this appeal. He is the subject of separate proceedings.
[2] The girls have three different fathers whose parental rights were also terminated by the juvenile court. Each of the fathers either waived or dismissed his appeal.

accused D.B. of domestic violence against her mother. The mother denied any abuse or violence on the part of D.B. and suggested K.E.'s account was imagined. HHS deemed the allegations founded. A child abuse assessment report emphasized the mother's lack of support of K.E. during the investigation, citing a text message in which the mother blamed K.E. for opening her "big fat mouth."

The State commenced child-in-need-of-assistance proceedings for K.E. and S.B., and the girls were removed from their mothers' care on January 23, 2023. The juvenile court cited their "exposure to unresolved substance dependency, mental health issues, domestic violence, and sexual abuse" as justifications for removal. During an initial meeting with a Family Centered Services worker, the mother expressed ongoing disbelief about K.E.'s claims. She told the caseworker that she hoped to regain care of S.B. but that she did not want to be reunified with K.E. due to the child's allegations against D.B. The mother later admitted these sentiments were inappropriate, attributing them to her borderline personality disorder.

Spring of 2023 brought a few improvements. The mother participated in therapy sessions and reported progress in her mental health through medication. She had weekly visits with both girls and began working to complete SafeCare programing. Despite a positive drug screen in April, visitation reports noted no substance-related safety concerns. The mother also began to express more support for K.E.

However, HHS remained troubled by the mother's ongoing relationship with D.B. Despite the mother's assurances that her romance with D.B. had ceased, the mother and D.B. remained involved. When V.B. was born in May 2023, D.B. was

present at the hospital.[3]  The State secured V.B.'s removal days after her birth.  All three girls were eventually adjudicated as children in need of assistance and placed in foster care.

Meanwhile, the mother's progress faltered.  She was unsuccessfully discharged from the SafeCare program due to lack of attendance.  She struggled to find a stable living arrangement.  And, during the summer of 2023, she was criminally charged for a series of conflicts with D.B., leading to her conviction for harassment, criminal mischief, and domestic assault.  The mother was sentenced to thirty-five days in jail after violating a no-contact order entered in those cases.

Following her incarceration, the mother resumed supervised visits with the children twice per week.  Reports from these visits compliment her ability to multitask in attending to the needs of the three girls.  The mother re-enrolled in SafeCare, began domestic abuse programming, and returned to mental health therapy.  But she failed to comply with requests for drug screens in November and December.  In February 2024, the mother was arrested for another no-contact violation after being stopped in a car with D.B.  Officers remarked on the marijuana odor emanating from the car, and marijuana was later found in the back of the police vehicle that transported the mother to jail.

Days later, the mother appeared for a permanency hearing.  The mother testified that she no longer doubted K.E. was sexually abused by D.B.  She asked the juvenile court to grant her an additional six months to work toward reunification, citing her recent efforts to apply for housing and her renewed participation in

---

[3] Paternity testing would later confirm that D.B. is V.B.'s biological father.

programming. But the juvenile court found the "cyclical nature" of the mother's involvement with drugs and D.B. showed a fundamental disregard for the concerns raised by HHS at the removal stage. It denied the mother's request for additional time but noted any progress would be considered at the termination hearing.

Things did not improve. In April 2024, the mother was arrested for another violation of her no-contact order with D.B. As of the June 7, 2024 termination hearing, she was residing at the Polk County Jail with no scheduled release date. Recognizing these developments were part of an eighteen-month pattern of conduct, the juvenile court concluded the mother had failed to meaningfully address the substance use, mental health, domestic violence, and protective capacity issues giving rise to this case. It denied the mother's renewed request for additional time and terminated her parental rights with respect to the three girls.

## II. Standard of Review

We review termination of parental rights de novo. *In re A.B.*, 956 N.W.2d 162, 168 (Iowa 2021). While we are not bound by the juvenile court's factual findings, we do give them weight, especially when they involve credibility determinations. *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014).

## III. Discussion

In reviewing the termination of parental rights, we follow a three-step analysis matching the framework laid out in Iowa Code section 232.116. The first question is whether a statutory basis for termination exists. *In re L.B.*, 970 N.W.2d 311, 313 (Iowa 2022). If it does, we must evaluate whether the child's best interests are served by termination. *Id.* Finally, we consider whether a permissive exception should be applied to preclude termination. *Id.* If the challenged steps

support termination, we then consider any ancillary issues raised by the parents, such as whether permanency should be deferred to allow additional efforts toward reunification. *See In re J.C.*, No. 22-2093, 2023 WL 2909069, at *3 (Iowa Ct. App. Apr. 12, 2023).

### A. Grounds for Termination

The juvenile court found grounds for termination under Iowa Code section 232.116(1)(d) and (i) for all three girls. It also found termination warranted under paragraph (f) with respect to K.E. and under paragraph (h) with respect to S.B. and V.B. Although the mother challenges the applicability of all grounds cited by the juvenile court, we may affirm so long as any statutory basis is satisfied. *See In re J.B.L.*, 844 N.W.2d 703, 704 (Iowa Ct. App. 2014). The State dedicates its briefing to the juvenile court's findings under paragraphs (f) and (h), so we focus our discussion there.

Iowa Code section 232.116(1)(f) permits termination of parental rights where (1) the child is four years of age or older; (2) the child has been adjudicated a child in need of assistance; (3) the child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months; and (4) there is clear and convincing evidence that the child cannot be safely returned to parental custody "at the present time." Paragraph (h) provides similar grounds for termination for a child who is three or younger and who has been removed from parental custody for six of the last twelve months. *See* Iowa Code § 232.116(1)(h).

The mother concedes that the age, adjudication, and length-of-removal elements of paragraphs (f) and (h) are satisfied. But she argues the State failed to meet its burden to prove the girls could not be safely returned to her custody.

The mother points to her successes in supervised visits, parenting classes, and mental-health therapy as proof of her efforts toward reunification. She contends that there was "no evidence . . . whatsoever" that she ever abused or harmed the girls, and that she could have been safely reunited with them if she had been allowed "6-months more." On a careful review of the record, we cannot reach the same conclusions.

The relevant inquiry under subparagraphs (f)(4) and (h)(4) is whether a child can be safely returned to the parent "at the present time"—meaning at the time of the termination hearing. *See In re A.B.*, 956 N.W.2d 162, 168–69 (Iowa 2021); *In re T.W.*, No. 20-0145, 2020 WL 1881115, at *1 (Iowa Ct. App. Apr. 15, 2020). At the time of the termination hearing in this case, the mother was in jail. She could not provide a projected discharge date, and she made no argument that her release was imminent. It is therefore beyond dispute that the girls could not be safely returned to her at the time of the hearing. *See In re R.D.*, No. 24-0704, 2024 WL 3518077, at *2 (Iowa Ct. App. July 24, 2024) (finding a child could not be safely returned to an incarcerated parent); *In re M.H.*, No. 24-0629, 2024 WL 4501971, at *2 (Iowa Ct. App. June 19, 2024) (same); *In re L.L.*, No. 24-0431, 2024 WL 2045335, at *2 (Iowa Ct. App. May 8, 2024) (same).

But even if the mother had not been detained on the date of the hearing, our conclusion would remain the same. The mother's April 2024 no-contact violation was just one part of a broader pattern of conduct. She repeatedly returned to the substance use and toxic romance that necessitated the removal of her girls. The mother's performance in programming and visitation cannot make

up for her failure to address these fundamental problems.[4]  *See In re T.S.*, 868 N.W.2d 425, 435 (Iowa Ct. App. 2015) (finding grounds for termination under paragraph (h) where a mother continued to see her abusive paramour in violation of a no-contact order, suggesting she had "gained very little insight over the course of the[] proceedings about her domestic violence issues and the dangers they pose to the children").

The mother's ongoing involvement with D.B. is particularly troubling considering his offense against K.E.  "The requirement that a parent acknowledge and recognize abuse is essential for any meaningful change to occur."  *In re S.R.*, 600 N.W.2d 63, 65 (Iowa Ct. App. 1999).  According to the mother, she no longer disbelieves K.E.'s allegations.  And yet, her conduct both before and after the permanency hearing shows she is either unwilling or unable to separate from her daughter's abuser—even in face of a court order.  The obvious risks that relationship posed to the children were no less present at the time of termination than they were at the time of removal.

We find the evidence clear and convincing that the children could not be safely returned to the mother.  *See* Iowa Code § 232.116(1)(f), (h).  For purposes of our step-one inquiry, we decline to speculate how circumstances might have changed after another six months.  At the time of the termination hearing, all three girls had been placed out of the mother's care for over a year.  Our statutory

---

[4] While we commend the mother for her positive visitation reports, she never progressed past supervised visits. *See, e.g.*, *In re S.L.*, No. 19-0107, 2019 WL 1055689, at *2 (Iowa Ct. App. Mar. 6, 2019) (finding failure to progress past fully supervised visits supported termination); *In re M.C.*, No. 18-0875, 2018 WL 6418760, at *4 (Iowa Ct. App. Dec. 5, 2018) (same).

framework does not give parents unlimited time to correct their course. *See In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010) (explaining the six-month timeframe in section 232.116(1)(h) reflects a careful "balance between the parent's efforts and the child's long-term best interests"). And because we find that the State proved a basis for termination under section 232.116(1)(f) and (h), we do not reach the mother's arguments as to the other statutory grounds cited by the juvenile court.

## B. Best Interests and Permissive Exception

In a single assignment of error, the mother contends that termination was contrary to the girls' best interests and that the juvenile court should have denied termination based on the strength of the parent-child bond. *See* Iowa Code § 232.116(2), (3)(c). Although the mother addresses these issues in tandem, subsections (2) and (3) involve separate inquiries with separate burdens of proof. *See In re R.P.*, No. 23-0419, 2023 WL 3612412, at *2 (Iowa Ct. App. May 24, 2023) (evaluating "whether the State . . . met its to prove termination is in the child's best interests"); *In re A.S.*, 906 N.W.2d 467, 476 (Iowa 2018) (explaining a parent resisting termination bears the burden to establish a permissive exception). We therefore analyze them separately.

When determining whether termination of parental rights is in the best interest of the child, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2). For a child placed in foster care, we may also consider whether the child has become integrated into the foster family, whether the foster family is willing to permanently care for the child, the length of time the child has spent in

the placement, and the reasonable preference of the child—provided the child is old enough to express one. *See id.* § 232.116(2)(b).

The record confirms the girls have flourished in their shared foster placement, which is pre-adoptive. It is the only home that V.B. has ever known. Prior to the termination hearing, K.E. told the guardian ad litem that she missed her mother but hoped she and her sisters could stay in their placement if reunification was not possible. We agree with the juvenile court that the girls' long-term needs outweigh the hardships of termination. These children are promised safety and stability in their current placement. They face significant risk if returned to life with their mother, who cannot seem to break her cycle of substance use, domestic conflict, and contact with K.E.'s perpetrator. Termination is in their best interests.

The mother asks us to find an exception to termination under section 232.116(3)(c), pointing to evidence that the girls hugged and kissed her during supervised visits and acted "clingy" when it was time to leave. Section 232.116(3)(c) permits the juvenile court to forego termination when clear and convincing evidence shows it "would be detrimental to the child at the time due to the closeness of the parent-child relationship." This exception is "permissive, not mandatory." *In re M.W.*, 876 N.W.2d 212, 225 (Iowa 2016) (citation omitted). We may use our discretion to spare the parent-child relationship based on the "the unique circumstances of each case and the best interests of the child." *Id.* (citation omitted).

Although the mother did not directly invoke the statutory exception at the termination hearing, the district court found that the bond between the mother and

her girls did not preclude termination. Setting aside the question of whether this issue was preserved, *see In re E.W.*, No. 22-0647, 2022 WL 2347196, at *3 (Iowa Ct. App. June 29, 2022), we find the mother's evidence fails to tip the balance. There is no doubt that the girls have affection for their mother. But even K.E., who spent the longest term in the mother's care, expressed heartache and confusion about her mother's choices. She told the guardian ad litem: "My mom broke her promise to me that she would never see [D.B.] again. I do not understand why she broke her promise." K.E. clearly questions the strength of the mother's relationship with her. Based on all the evidence, we cannot find that the parent-child bond warrants reunification at all costs.

### C. Reasonable Efforts

The mother contends her ability to achieve reunification was hindered by a lack of reasonable efforts on the part of the State. *See* Iowa Code § 232.102(6). At early stages of the case, the mother requested that HHS assist her in securing stable housing and facilitating additional visits with the girls. She filed a motion for a reasonable efforts hearing, but she later withdrew it. At the permanency hearing, the juvenile court noted the record was unclear as to what, if any, reasonable-efforts request remained to be addressed. The mother did not challenge the State's efforts at the termination hearing.

Under these circumstances, we find the mother's reasonable efforts challenge is not preserved. *See In re A.A.G.*, 708 N.W.2d 85, 91 (Iowa Ct. App. 2005). Even if it was, we fail to see how housing assistance and additional visitation would improve upon the mother's pattern of personal choices that required the children's removal. *See In re M.B.* 553 N.W.2d 343, 345 (Iowa Ct.

App. 1996) (finding no evidence that increased visitation would have allowed aided reunification where a mother "demonstrated an inability to make those changes in her life essential to proper parenting, including her continued codependency on abusive males").

### D. Additional Time

Finally, the mother contends that the juvenile court should have allowed her additional time to address the problems preventing the return of her girls. In lieu of termination, a court may grant a parent six additional months to work toward reunification. *See* Iowa Code § 232.117(5) (permitting the court to enter a permanency order pursuant to section 232.104 if it does not terminate parental rights); *id.* § 232.104(2)(b) (providing a permanency option of giving an additional six months to work toward reunification). But in so doing, the court must be able to "enumerate the specific factors, conditions, or expected behavioral changes which comprise the basis for the determination that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period." *Id.* § 232.104(2)(b).

At the termination hearing, the mother argued that six months would allow her time to engage in mental-health therapy and continue visits with her children. The juvenile court found these proposals insufficient to assure a likelihood of meaningful change. We likewise decline to defer permanency. The mother has participated in mental-health treatment and visitation since the beginning of this case. Despite those opportunities, and even under the threat of increasing criminal sanctions, she was unable to change the conditions that warrant termination. "It is well-settled law that we cannot deprive [children] of permanency after the State

has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child[ren]." *A.M.*, 843 N.W.2d at 112. We are hopeful that the mother can progress in her personal struggles, but we will not require the girls to wait on that work any longer.

## IV. Conclusion

We affirm termination of the mother's parental rights.

**AFFIRMED.**